```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   UNITED STATES OF AMERICA,                                :
                                                            :
                                                            :   DECISION AND ORDER
                                                            :
                   - against -                              :   12 Cr. 655 (BMC)
                                                            :
   REGINA LEWIS,                                            :
                                                            :
                                       Defendant.           :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Following a bench trial, I entered my Findings of Fact, Conclusions of Law and Verdict (the "Verdict"), finding defendant guilty of threatening to kill a federal judge in violation of 18 U.S.C. § 115(a)(1)(B). Familiarity with the Verdict and prior proceedings is assumed, but to summarize, I found that she had threatened the life of Judge Lewis A. Kaplan on three occasions: once in a telephone call to the Judge's staff; once in a call to the *pro se* office; and once during a telephone call from a Deputy United States Marshal who was following up on the earlier two threats. After entering the Verdict, I sentenced her to time served (approximately 29 months) and one year of supervised release.

Defendant now moves, through counsel, to set aside the Verdict pursuant to Fed. R. Crim. P. 33 on the grounds that I misconstrued the required *mens rea*, required expert testimony not permitted by the Federal Rules of Evidence, and shifted the burden of proving *mens rea* to defendant. In addition, defendant has submitted two filings *pro se* which I will consider as supplements to her Rule 33 motion. None of the grounds she raises have merit, and the motion is accordingly denied.

Fed. R. Crim. P. 33 permits the Court to "vacate any judgment and grant a new trial if justice so requires." Fed. R. Crim. P. 33(a). Courts in this Circuit grant new trials only "with great caution . . . in the most extraordinary circumstances." Romero v. United States, 28 F.3d 267, 268 (2d Cir. 1994) (per curiam) (quoting Sanders v. Sullivan, 863 F.2d 218, 225 (2d Cir. 1988)).

Defendant's principal argument – of which her additional arguments are essentially derivative – is that I misconstrued and gave inadequate weight to the testimony of her expert, Dr. Elizabeth Owen. Dr. Owen testified that defendant suffers from bi-polar disorder that manifests, among other ways, in "racing" thoughts when she is in a manic state, and that defendant cannot control these thoughts or keep from expressing them. I held that the Government had proven that defendant had the specific intent to intimidate the district court judge, and the fact that she could not keep from expressing some of her thoughts some of the time did not preclude an intent that these particular expressions have the effect of causing intimidation. Defendant, in her motion, contends that in so holding, I "improperly conflated [defendant's] thought about intimidating Judge Kaplan with *mens rea*, or intent, to actually to do so."

In so arguing, it is defendant who is improperly conflating separate concepts, namely, *mens rea*, which is of course required, and premeditation, which is not. The fact that defendant is prone to racing thoughts does not mean that the effect of the expression of any one of her thoughts is unintended. The Government did not have to prove that she had formed the required intent in advance, or for any period of time, to prove she had the requisite *mens rea*. Even people without bi-polar disorder (which I will assume, for present purposes, that she has, although I found no need to decide that issue in the Verdict) can act out of anger or impulse. That does not mean that they do not legally intend the consequences of those actions.

What I did find in the Verdict was that although defendant lacks the filter to stop her thoughts from being expressed, she very much intended to cause the intimidation that her statements would have been likely to create.[1]  All of the circumstances pointed to this *mens rea*. Her multiple statements, two out of three of which were the focal point of telephone calls to Court personnel which she initiated, and the third of which was in response to a call from the United States Marshal, appeared consciously calculated to have exactly the effect that one would expect them to have, and that I found they would have on a reasonable person.  Except for the last call, she found the numbers of the Court personnel she called, she dialed the phone, and then made the statements that constitute the *actus reus* of this crime.  These calls were not expressions of "fleeting" thoughts; they were intentionally delivered with the motivation to cause fear.

Under defendant's argument, she could never form the required *mens rea* to make a threat because she cannot stop herself from making any statement when she is in a manic state. This would be a back-door means of introducing a capacity defense, which is squarely foreclosed by the Insanity Defense Reform Act of 1984 and which defendant has assiduously denied that she is asserting.

It was my function at trial, based upon all of the evidence, to determine whether these particular statements were ones that she intended to use to accomplish an illegal purpose. Having reviewed the trial record and defendant's arguments, I remain certain that she did. Defendant, in her motion, describes these as "fleeting thoughts," and the record and my experience with her shows that she is indeed prone to the expression of such thoughts, but my finding was that these particular thoughts did not "flee;" they stuck and became the seed of a

---

[1] Defendant's reliance on <u>Morissette v. United States</u>, 342 U.S. 246 (1952), for the proposition that "a fact finder may not presume intent from a defendant's actions" misreads that case.  <u>Morissette</u> instructs that the law does not presume intent from conduct, but does not contradict the well-established principle that intent may be inferred from conduct by a finder of fact.

heartfelt intent to cause intimidation, and she expressed them aloud as her means of executing on that intent.

Notably, defendant does not even contend that she was surprised by the words that came out of her mouth, or regretted them, and Dr. Owen reported no such revisitation in her consultations with defendant. To the contrary, defendant never sought to distance herself from her conduct. In my role as a fact finder, defendant struck me as a person who knew exactly what she was doing and wanted to do it.

The observation above leads me to defendant's related point, namely, that in holding that there was "no psychiatric evidence that the defendant did not, at the time she placed the three calls at issue in this case, intend to intimidate or to retaliate against Judge Kaplan," I impermissibly shifted the burden of proof to defendant. I disagree. The argument lacks appreciation for the simplicity of the Government's case. The three statements that the Government put into evidence during its case, and the surrounding circumstances, were more than sufficient to allow the Government to meet its burden of proof. Defendant's statements, coupled with the circumstances under which they were made, the defendant's motive that the Government demonstrated, and the repetition of those statements, made the crime almost self-evident.

Once the Government presented its legally sufficient case for conviction beyond a reasonable doubt, it was up to defendant to show sufficient flaws in the evidence to rebut the case. Defendant recognized this; that is why she called Dr. Owen and, presumably, why she testified herself. The Court's observation upon which defendant bases her argument was only responding to the insufficiency of defendant's rebuttal. Commenting on the unpersuasiveness or insufficiency of defendant's rebuttal is not a shifting of the burden of proof.

Defendant's objection to my observation that I would not have admitted Dr. Owen's testimony in a jury trial misses the point. That dictum reflected the fact that Dr. Owen gave me no help, and would not have given a jury any help, in determining defendant's intent. This does not mean that I expected Dr. Owen to testify as to whether defendant in fact had the required mental state and intent to intimidate or frighten the Judge. I agree with defendant that such testimony would be inadmissible under Fed. R. Evid. 704(b). But even if one accepts defendant's contention that all of her thoughts in a manic state are "fleeting," Dr. Owen, as an expert, provided no framework by which a fact-finder could determine whether such thoughts reflect the conscious intent of the person thinking them.

As to defendant's *pro se* submissions, not everything in them relates to her conviction. In her first submission, she criticizes her attorney for not challenging her arrest on the grounds that no warrants were issued. I do not recall if warrants were issued or not, but in light of the statements that I heard her make on tape, there was probable cause for her arrest even in the absence of an arrest warrant. Second, if I read her submission correctly, she is suggesting that she originally contacted the Court not to threaten Judge Kaplan but to inquire as to the status of a case over which he was not presiding, and that only when she was repeatedly hung up upon by Court staff did she leave the threatening messages. I do not think that this matters; when she left the messages, she was definitely angry, but she still wanted to put Judge Kaplan in fear of his life. People often commit crimes out of anger, and I have no doubt that was the case with plaintiff here. The other matters she describes in the first filing also appear to explain the basis for her anger.

Her second submission reprises some of the points from her first. She first states that the absence of an arrest or search warrant shows that she did not engage in a true threat or act in

5

violation of the statute.  I disagree.  Guilt or innocence is not determined based on the presence or absence of warrants; they are separate concepts.  Second, she feels it is unfair that she is found guilty of threatening Judge Kaplan because he was improperly assigned to her cases.  She asserts that cases have to be assigned by a "court assignment committee."  The assignment of her cases, even if not in accordance with procedures (and I have no reason to think it was not in accordance with procedures) does not alter my conclusions with regard to her intent to intimidate Judge Kaplan.  Finally, she contends that her confinement pre-trial to a medical facility violated her right to due process of law.  This again has no bearing on her conviction and does not alter the findings that I have made.

**SO ORDERED.**

                                                                                          U.S.D.J.

Dated: Brooklyn, New York
       February 19, 2015